ANDREW SCHLEHUBER, administrator, *vs.* AMERICAN EXPRESS COMPANY.

Suffolk.   March 13, 1918. — May 25, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, & PIERCE, JJ.

*Agency,* Existence of relation, Scope of employment.  *Negligence,* Employer's liability, In loading truck.

At the trial of an action by an administrator against an express company, which was not a subscriber under the workmen's compensation act, for personal injuries and death of an employee of the defendant caused by a barrel falling upon him as he and a second man were loading it upon a truck, there was evidence that the barrel fell by reason of negligence of the second man.   From evidence, admitted under R. L. c. 175, § 66, it appeared that the intestate had made a statement to one witness which described the negligent workman as "a fellow . . . that does lumping around there," who "helped" the deceased "put on a barrel of fish from a truck on to the car," the day before the Fourth."   To another witness, regarding the same man, the intestate had stated that on the day of the accident there was "working with him" another man whose name he did not know, who did not work steadily, that he "worked sometimes a day and sometimes again later he would work another day."   To a third witness the intestate had spoken of the man as "a lumper" who was working with him.   There was other evidence that, in a rush of business at that season an agent of the defendant had authority to and did employ extra "lumpers" to aid in handling heavy boxes and barrels.  *Held,* that findings were warranted that the man whose negligence caused the injury and death of the plaintiff's intestate was at that time in the defendant's employ and acting within the scope of his employment.

TORT for personal injuries and death of the plaintiff's intestate alleged to have resulted from a barrel falling upon him when, as an

employee of the defendant, he was loading it on to a truck. Writ dated June 28, 1916.

In the Superior Court the case was tried before *Hall*, J. The injury was received on July 3, 1915. He died on December 12, 1915, of cancer, and there was conflicting evidence on the question whether his death was caused by his injury. Other material evidence is described in the opinion. At the close of the evidence the defendant moved that a verdict be ordered in its favor. The motion was denied. The jury found for the plaintiff in the sum of $5,700; and the defendant alleged exceptions.

*A. M. Pinkham*, (*A. L. West* with him,) for the defendant.

*J. W. McAnarney*, (*T. F. McAnarney* with him,) for the plaintiff.

DE COURCY, J. The plaintiff has recovered a verdict on the count at common law for the conscious suffering of his intestate, Joseph Schlehuber. The only question before us is whether the trial judge should have ordered a verdict for the defendant.

The intestate was in the employ of the defendant on July 3, 1915. The only evidence that he sustained an injury on that day in the course of his work consisted of declarations made by him to others and introduced in evidence under R. L. c. 175, § 66. But as the jury believed this testimony, we must assume that the declarations were made, and were true. The defendant was not insured under the workmen's compensation act; consequently it was no defence to the plaintiff's case that Joseph Schlehuber himself was negligent, or that he assumed the risk, or that the injury was caused by the negligence of a fellow employee. St. 1911, c. 751, Part I, § 1.

According to the declarations of the deceased, he was working for the defendant at the North Station in Boston, and with another man was lifting a barrel of fish from a truck into a car, when the barrel in some way was pushed against him, and he sustained injuries which later proved to be fatal. It is strongly urged by the defendant that, even accepting the truth of said declarations, there was no evidence that the fellow workman was an employee of the defendant, or was acting within the scope of his employment, or that he was negligent.

The evidence bearing on each of these elements was meager; but it was enough to be submitted to the jury. For instance, the witness Ochs testified that Joseph in telling how the accident hap-

pened, said, " . . . 'there was a fellow' . . . 'that does lumping around there,' . . . 'he helped me put on a barrel of fish' . . . 'from a truck on to the car, . . . the day before the Fourth. And in lifting up the barrel, he took hold one side and I took hold of the other. He got it practically up to the entrance, to the door of the car, and I told him to wait a minute until I got a good hold to give it a high boost. In fact, he lifted before I did and threw the barrel over on to me. It went down, and I struck up against the truck, struck me in the back here . . . .'" He said to Thomas G. Connolly, his attorney, that "he had been employed at that time by the American Express Company, and also working with him on that day at the time of the accident was another man. He could n't — he never had learned the name of the other man. He said the other man did n't work steadily, he worked sometimes a day and sometimes again later he would work another day. . . . He said that . . . they were loading a barrel of fish from an electric truck on to a car that was going up to Fitchburg and Albany. The two of them got hold of this barrel of fish and canted it over on its edge. Then he said to the other man, 'Now hold it while I get a better grip, or purchase' — I don't know whether he said grip or purchase, . . . So the other man held it, and he let go; and as he was preparing to get this other hold or purchase, the other man lunged forward on it, and shoved him, the plaintiff, against what he called the ell of the truck." One Boegner testified that the intestate said to him, "' . . . I had an accident.' . . . 'A lumper and I lifted a barrel from the truck to the car down at the North Station, and while we were lifting, that fellow shoved the barrel over on to me.' . . . 'The darn fool shoved the barrel over on to me and then let go.'" In addition to this and like testimony the jury could infer that in the rush of express business on the day before the Fourth of July the defendant would be likely to need and to hire extra "lumpers" to aid in the handling of heavy boxes and barrels. Admittedly the only persons authorized to employ help were the agent French and his assistants. *Davis* v. *Boston Elevated Railway*, 222 Mass. 475, 479. *Robinson* v. *Doe*, 224 Mass. 319.

On the evidence the jury could also find that the injury to the plaintiff was caused by the carelessness of this fellow employee in the course of his employment, that is while doing the usual work

of a "lumper" or helper. *D'Addio* v. *Hinckley Rendering Co.* 213 Mass. 465. *Heywood* v. *Ogasapian*, 224 Mass. 203.

It is conceded that there was evidence for the jury that the cancer, from which the intestate died, resulted from the accident.

*Exceptions overruled.*